**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| TARA L. JEFFERSON, ) | |
| ) | CASE NO. 1:14-cv-01851 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Tara L. Jefferson ("Jefferson") challenges the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying her claim for Supplemental Security Income ("SSI") under Title(s) XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is AFFIRMED.

**I. Procedural History**

On October 25, 2007, Jefferson filed an application for SSI alleging a disability onset date of September 1, 2001. (Tr. 13.) Her application was denied both initially and upon

reconsideration. Jefferson timely requested an administrative hearing.

On February 7, 2013, an Administrative Law Judge ("ALJ") held a hearing during which Jefferson, represented by counsel, an impartial medical expert ("ME"), and an impartial vocational expert ("VE") testified.[1] (Tr. 13.) On April 1, 2013, the ALJ found Jefferson was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. (Tr. 22-23.) The ALJ's decision became final when the Appeals Council denied further review.

## II. Evidence

*Personal and Vocational Evidence*

Age forty-seven (47) at the time of her administrative hearing, Jefferson is a "younger" person under social security regulations. *See* 20 C.F.R. § 416.963(c). Jefferson has a limited education and no past relevant work. (Tr. 22.)

*Relevant Hearing Testimony*[2]

Daniel E. Schweid, M.D., a board certified psychiatrist, reviewed Jefferson's medical history and testified as the ME at the hearing. (Tr. 61-62.) He noted that Jefferson had been diagnosed with an affective disorder with psychotic features that had been labeled major depression with psychosis. (Tr. 62.) He further noted personality disorder with borderline features as well as abuse of alcohol, cocaine, and cannabis. (Tr. 63.) All three diagnoses had been consistently present since October of 2007. (Tr. 64.)

The ME stated that Jefferson probably satisfied the criteria for listings 12.03 and/or

---

[1] The February 7, 2013 hearing was held after a remand from the Appeals Council. (Tr. 13.)

[2] Only the testimony of the VE and the ME are relevant to the assignments of error raised.

12.04. (Tr. 65.) Specifically, the ME opined that the C criteria was satisfied as he believed Jefferson suffered from a residual disease process that results in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate. (Tr. 65.) When the ALJ asked the ME if there were any examples of Jefferson decompensating under a change in mental demands, the ME stated "I don't know how to say yes or no." (Tr. 65.) He did state that Dr. Zerba's January 13, 2011 opinion supported such a prediction. (Tr. 65-66.) When asked again by the ALJ if there were any examples of decompensation with a change in mental demand, the ME did not identify any. (Tr. 68.) The ME testified that "I'll back off that. Predictably, I would say, with some probability, not clinical certainty, but some probability, she would probably decompensate because some of these other people have said, for example" nurse practitioner Blasse, who stated that Jefferson would be absent from work four days a month.[3] (Tr. 68-69.) The ME explained that missing four days per month "is not full decompensation, but that means that's a problem with sustainability." (Tr. 69.) He also noted Ms. Blasse's opinion that Jefferson would be unable to function in the area of coordination and proximity to others. *Id*. Though the testimony is confusing, it appears that the ME "backed off" his testimony that C criteria of 12.04 was satisfied. (Tr. 69.) When asked again if the severity of Jefferson's condition medically equaled any of the listings, the ME changed his answer to no. (Tr. 70.)

    The ME testified that throughout the relevant time period, Jefferson would have had a number of limitations. (Tr. 71-72.) First, Jefferson could not work around unprotected heights,

---

[3] As discussed *infra*, Ms. Blasse's opinion from February 5, 2013 was not part of the record before the ALJ. (*See* Footnote 8).

dangerous unprotected machinery, or commercial operation of motor vehicles. (Tr. 71.) Even without substance abuse problems, the ME opined that Jefferson would have the same RFC, which would include limitations to routine, low-stress tasks that would be without intense interpersonal aspects such as arbitration, negotiation, or confrontation. (Tr. 71-72.) Jefferson also could not have any managerial or supervisory responsibilities for the health, safety, or welfare of others. (Tr. 72.) The ME found Jefferson would be unable to tolerate high or strict production quotas. *Id*. The ME then indicated that he agreed with the following RFC proposed by the ALJ:

> Well, let me ask you this: If I were to conclude, based on the record, including it's vagaries, that that Ms. Jefferson, since October 7th, of or October, of 2007, since the application date, should could perform work that involved no commercial driving, no hazards exposure to hazards; that was limited to simple, routine, repetitive tasks; that involved maybe simple work-related decisions; that involved less than one-third of the day in contact with the public or other people, including coworkers so limiting that that it's low-stress work, defined as no changes in the work to be performed and no changes in the work setting.
>
> * * *
>
> Let me add any interaction with the public or coworkers would be limited would be nothing more than superficial, which would be defined as serving, speaking to, or receiving instructions.

(Tr. 72-73.)

The ME testified that "almost overdefines it, but I agree. I think that's fine." (Tr. 73.)

Jefferson's attorney asked the ME whether he believed Jefferson's psychiatric symptoms "would allow her to complete a normal work day or work week on a sustained basis?" (Tr. 74.) The ME testified that he did not believe so, and indicated that he believed Jefferson's problems would exist absent any substance abuse. *Id*. He based his testimony on medical records from

4

North Coast, which he maintains contained a diagnosis of substance induced mood disorder. (Tr. 75.) The ME explained that while the diagnoses also included alcohol abuse and THC dependence, the medical record did not expressly attribute mood disorder or psychosis to either of those. (Tr. 75, *citing* Exh. 17F.)

> The ALJ proceeded to offer the following hypothetical to the VE:
>
> Imagine, if you would, please, a hypothetical worker of the age, education, and past relevant work experience of the claimant.
>
> And to be specific, I mean a 43-year-old with a limited education, no past relevant work experience who is able to perform work that does not involve commercial driving or exposure to hazards, such as unprotected heights or uncovered industrial machinery. Work is limited to simple, routine, repetitive tasks. It can require simple work-related decisions. The work should require interaction with the public that totals up to but no more than one-third of the day or interaction with coworkers that totals up to but no more than one-third of the day and any amount of interaction with others should be superficial — that is, limited to serving, speaking to, or receiving instructions. The work should be low stress, defined as no changes in the work to be performed — or no changes in the work setting. And it should be work that does not involve a consistently fast pace or consistently high production standards.

(Tr. 77-78.)

The VE responded that there were a number of jobs such an individual could perform and gave the following examples: cleaner, Dictionary of Occupational Titles ("DOT") § 323.687-010; dishwasher, DOT § 318.687-010; order puller, DOT § 922.687-058. (Tr. 78-79.) In response to a question from Jefferson's counsel, the VE stated that these jobs could not be performed if the hypothetical individual had to work in isolation.[4] (Tr. 80.) In response to a second question from counsel, the VE testified that an individual who could not complete a normal workday or work week on a sustained basis would be unemployable. *Id*.

---

[4] In his testimony, the VE distinguished between interaction and isolation. (Tr. 79.)

5

### III. Standard for Disability

A disabled claimant may be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201. The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### IV. Summary of Commissioner's Decision

The ALJ found Jefferson established medically determinable, severe impairments, due to depression not otherwise specified (NOS) and substance addiction disorder. (Tr. 16.) Her impairments, including her substance abuse disorder, met or equaled one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, specifically listings 12.04 and 12.09. (Tr. 16.) However, if Jefferson stopped abusing substances, she would not meet or medically equal any listed impairment. (Tr.

6

19.) Jefferson was determined to have a Residual Functional Capacity ("RFC") for a full range of work at all exertional levels with a number of non-exertional limitations. (Tr. 20.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Jefferson was not disabled. (Tr. 22-23.)

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the

Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

### VI. Analysis

At the outset, the Court notes that this case involves a determination whether the claimant's substance abuse is a contributing factor to her disability. "In 1996, Congress passed

the Contract with America Advancement Act, which among other things eliminated disability benefits when drug addiction or alcoholism was a 'contributing factor material to the Commissioner's determination' that the individual is disabled. Pub. L. No. 104-121 § 105(a)(1)." *Bartley v. Barnhart*, 117 Fed. App'x. 993, 995 (6th Cir. 2004).

> § 416.935 How we will determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>
> (a) General. If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability, unless we find that you are eligible for benefits because of your age or blindness.
>
> (b) Process we will follow when we have medical evidence of your drug addiction or alcoholism.
>
> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>
> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
>
> (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>
> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. § 416.935

"The claimant has the burden of proving that substance abuse is not a factor material to the determination of disability." *Trent v. Astrue*, 2011 U.S. Dist. LEXIS 23331 at *8 (N.D. Ohio

9

Mar. 8, 2011) (*citing Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002); *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir.1999)); *O'Neal v. Comm'r of Soc. Sec.*, 2013 U.S. Dist. LEXIS 14742 at 86 (N.D. Ohio, Feb. 4, 2013). As succinctly explained by another district court:

> Where an ALJ finds that a claimant is disabled, but there is medical evidence of drug addiction or alcoholism, the ALJ must determine whether the substance abuse is a contributing factor material to the determination of disability. See 20 C.F.R. §§ 404.1535(a), 416.935(a). The ALJ must identify those physical and mental limitations that would remain if the claimant stopped using drugs and alcohol, and then assess whether the remaining limitations are disabling. See 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). If the remaining limitations are not disabling, substance abuse is a contributing factor material to the determination of disability; and accordingly, the claimant cannot be considered disabled under the Social Security Act. 20 C.F.R. §§ 404.1535(b)(2)(i), 416.935(b)(2)(i). "The key factor . . . in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether [the ALJ] would still find [the claimant] disabled if [he] stopped using drugs or alcohol." 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1).

*Duthler v. Comm'r of Soc. Sec.*, 2015 U.S. Dist. LEXIS 31799 at **10-11 (W.D. Mich., Jan. 28, 2015). The last factor is worth emphasizing, as the Sixth Circuit has explained that it is proper for an ALJ to look to "periods of sobriety in the record to determine whether [claimant] suffers from a work-limiting mental illness independent of substance abuse." *Bartley*, 117 Fed. App'x. at 998.

***Weight Ascribed to the ME***

In her first assignment of error, Jefferson argues that the ALJ erred by failing to explain what weight, if any, she ascribed to the opinion of the ME. Jefferson avers that the ALJ made only a single, passing reference to the ME's testimony in the decision. (ECF No. 15 at 12-16.) At the hearing, the ME opined that Jefferson's mental limitations would exist even in the absence of substance abuse, and would result in an inability to complete a normal workday or work week

on a sustained basis. (Tr. 71-75.) According to Jefferson, this specific opinion went unaddressed. The Commissioner asserts that the ME offered two opinions, the first of which was an opinion as to Jefferson's RFC which was adopted in its entirety by the ALJ. (ECF No. 18 at 8.) The Commissioner acknowledges, nonetheless, that the ME also stated Jefferson would be unable to complete a normal workday or workweek. *Id*. The Commissioner admits the ALJ did not discuss this specific opinion of the ME, but asserts that the remainder of the decision makes it clear that the opinion was given little weight in light of the other evidence relied upon. *Id*. at 8-11.

Pursuant to 20 C.F.R. § 416.927(e)(2)(i), "[ALJs] are ***not*** bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists." Nonetheless, because said consultants are "highly qualified physicians, psychologists, and other medical specialists" ALJs must "consider" their findings. *Id*. When considering these opinions, ALJs should consider factors such as the nature of the relationship (*i.e.* examining or non-examining or the frequency of examination), supportability, consistency, and other factors. 20 C.F.R. § 416.927(e). Furthermore, the regulations mandate that "[u]nless the treating physician's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist as the [ALJ] must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do work for us." 20 C.F.R. § 416.927(e)(2)(ii). In other words, although, "[ALJs] and the Appeals Council are not bound by findings made by State agency or other program physicians and psychologists, they may not ignore these opinions and must explain the weight given to the opinions in their decisions." SSR

11

96-6p, 1996 SSR LEXIS 3, *5, 1996 WL 374180, *2 (Jul. 2, 1996).

Nonetheless, this *explanation* requirement should not be confused with the standard required for the weight ascribed to treating sources.  The Sixth Circuit has held that the regulation requiring an ALJ to provide "good reasons" for the weight given a treating physician's opinion does *not* apply to an ALJ's failure to explain his favoring of one non-treating source's opinion over another.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496 (6th Cir. 2006).  The "good reasons" rule applies only to treating sources.  *See, e.g., Chandler v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 90128 at **21-22 (S.D. Ohio, July 1, 2014) ("the ALJ is not required to give 'good reasons' for rejecting a nontreating source's opinions in the same way as must be done for a treating source").

> The only portion of the decision that mentions the ME states as follows:
>
> > The evidence in the record, including the testimony of Dr. Schweid, the medical expert, establishes that Ms. Jefferson's depression NOS would continue to be a severe impairment if she stopped using substances because it would still cause more than a minimal limitation in her ability to perform basic work activities.

(Tr. 19.)

In the Court's recitation of the relevant hearing testimony, it is clear that the ALJ adopted the RFC limitations set forth by the ME.  As such, the ALJ's failure to discuss those opinions is immaterial.  However, it is true that the ALJ did not expressly address the ME's opinion that Jefferson's mental limitations would exist even without substance abuse, essentially an opinion that Jefferson's drug addiction and/or alcoholism is not a material contributing factor material.[5]

---

[5] In this Court's view, the ME's corresponding opinion   that Jefferson could not complete a normal work day or work week on a sustained basis   is merely the flip side of the same coin, as it is based entirely on the ME's prediction that Jefferson's limitations would remain unchanged even in the absence of substance abuse.

12

(Tr. 74.) Nonetheless, reading the decision a whole, in the very next section, as well as in the section addressing the RFC, the ALJ explained the reasons why she found substance abuse was a contributing material factor (*i.e.* why she found Jefferson's limitations would not be disabling in the absence of substance abuse). (Tr. 19-22.) Specifically, the ALJ found as follows:

> The evidence establishes that if Ms. Jefferson was not using substances, she would not be disabled. As noted previously, Ms. Jefferson was hospitalized at Northcoast Behavioral Health from July 7, 2012 to July 17, 2012. During the ten days that she was hospitalized, Ms. Jefferson was not able to use drugs or alcohol and at the time of discharge, she was assigned a GAF of 95[6] which indicates no limitations. (exh. 17F, p. 6). At the consultative exam performed by Dr. Pickholtz, he stated that he believed that Ms. Jefferson's GAF would increase considerably, probably no less than 70 if she were not drinking and if her auditory hallucinations go into remission after a period of sobriety. He also indicated that she could probably perform low skilled and unskilled labor in the absence of alcohol ingestion. (exh. 3F, pp. 7-8). Dr. Faust noted at the time of his examination that he believed that Ms. Jefferson could function more effectively if she were not drinking excessively. (exh. 15F, p. 5). Furthermore, records from Metro Health dated August 15, 2012 and October 11, 2012, after Ms. Jefferson's hospitalization at Northcoast in July, indicate that she was no longer drinking and that Ms. Jefferson was feeling less depressed. (exh. 18F, pp. 2 and 11).
>
> Therefore, if Ms. Jefferson stopped the substance use, I find that her medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, her statements concerning the intensity, persistence and limiting effects of these symptoms are not credible. Ms. Jefferson's

---

[6] The Global Assessment of Functioning ("GAF") scale reports a clinician's assessment of an individual's overall level of functioning. *Diagnostic & Statistical Manual of Mental Disorders*, 32-34 (American Psychiatric Association, 4th ed revised, 2000) ("DSM-IV"). An individual's GAF is rated between 0 - 100, with lower numbers indicating more severe mental impairments. A GAF score between 91 and 100 is indicative of superior functioning and no symptoms, while a score between 61 and 70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning. A person who scores in the latter range may have a depressed mood, mild insomnia, or occasional truancy, but is generally functioning pretty well and has some meaningful interpersonal relationships. *See DSM-IV* at 34. It bears noting, however, that a recent update of the DSM eliminated the GAF scale because of "its conceptual lack of clarity . . . and questionable psychometrics in routine practice." *See Diagnostic and Statistical Manual of Mental Disorders* (DSM-5) at 16 (American Psychiatric Association, 5th ed., 2013).

> hospitalization records at Northcoast Behavior Health and patient notes from MetroHealth after this hospitalization establish that she does not suffer disabling symptoms when she is not using/abusing substances. The opinions of both Dr. Pickholtz and Dr. Faust who performed consultative exams also support the finding that Ms. Jefferson would not be disabled if she stopped using substances. Additionally, when Ms. Jefferson was hospitalized at Northcoast, there was a question of malingering. These records note that Ms. Jefferson was very upset that her social security had been cut off and she was keen on getting it back. (exh. 17F, p. 6). Finally, there are inconsistencies in statements she made at the consultative exams. She told Dr. Faust that she had never been abused or neglected. However, she told Dr. Zerba that she had been abused and neglected when growing up. (exhs. 12F and 15F).

(Tr. 20-21.)

Thereafter, the ALJ explained that she was ascribing great weight to the examining sources, Drs. Pickholtz and Faust, as well as considerable weight to the non-examining opinion of Dr. Umana. (Tr. 21.) As noted above, it was perfectly appropriate for the ALJ to consider the period of sobriety while Jefferson was at North Coast, where she was found to be virtually symptom free at the time of discharge. It was also appropriate for the ALJ to ascribe greater weight to the opinions of Drs. Pickholtz and Faust than to the ME, as "[g]enerally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 416.927(c)(1). While it would have behooved the ALJ to offer an explicit rather than implicit explanation why she was rejecting the ME's opinion as to materiality, the Court declines to remand a decision which makes it abundantly clear to the reviewer why an opinion was rejected. Under the distinct facts of this case, had the ALJ expressly stated that the ME's opinion was inconsistent with the period of sobriety and the opinions of the examining sources, there would be no question that the explanation would have been sufficient. "When 'remand would be an idle and useless formality,' courts are not required

14

to "convert judicial review of agency action into a ping-pong game." *Kobetic v. Comm'r of Soc. Sec.*, 114 Fed. App'x. 171, 173 (6th Cir. 2004) (*quoting NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6, 22 L. Ed. 2d 709, 89 S. Ct. 1426 (1969)); *see also Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result.")

Finally, neither party briefed the issue of who is ultimately responsible for determining whether substance abuse is a contributing factor material to the determination of disability. Pursuant to Social Security Ruling ("SSR") 13-2p, 2013 SSR LEXIS 2 at *41 (2013), "[a]t the ALJ and Appeals Council levels ..., the ALJ or appeals counsel determines whether DAA [drug addiction and alcoholism] is material to the determination of disability." As such, it is not entirely clear whether a medical source's opinion as to materiality constitutes a "medical opinion" or an issue reserved to the Commissioner that is not entitled to any special weight. SSR 13-2p § 14 addresses the question of "[w]hat explanations does the determination or decision need to contain?" It states that "adjudicators must provide sufficient information so that a subsequent reviewer *considering all of the evidence in the case record* can understand the reasons for" the findings relating to whether substance abuse is a contributing material factor. SSR13-2p § 14 (emphasis added) ("a single statement that DAA is or is not material to the determination of disability by an adjudicator is not sufficient.")

Reading the ALJ's decision in its entirety, it is clear why the ALJ found that substance abuse was a material factor. Furthermore, nothing in SSR 13-2p suggests that an ALJ must discuss or ascribe any specific weight to any source when determining the materiality of

15

substance abuse. SSR 13-2p simply requires that ALJs "provide their rationales [for materiality] in their determinations and decisions." Here, the ALJ did so.

***Credibility Assessment***

In her second assignment of error, Jefferson avers that the ALJ failed to articulate a valid basis for finding her not credible. (ECF No. 15 at 16-17.)

Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly. *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). Nonetheless, "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individuals statements and the reason for the weight." SSR 96-7p, Purpose section; *see also Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so"); *Cross v. Comm'r of Soc. Sec.*, 373 F.Supp.2d 724, 733 (N.D. Ohio 2005).

To determine credibility, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record. *See* SSR 96-7p, Purpose. Beyond medical evidence, there are seven factors that the ALJ should consider.[7] The ALJ need not analyze all seven factors, but should show that he

---

[7] The seven factors are: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual

considered the relevant evidence. *See Cross*, 373 F. Supp.2d at 733; *Masch v. Barnhart*, 406 F.Supp.2d 1038, 1046 (E.D.Wis.2005).

Jefferson's argument is not altogether clear. While she extensively quotes portions of SSR 96-7p, she fails to identify which portion of her testimony was improperly rejected as incredible. (ECF No. 15 at 16-17.) Instead, Jefferson generally takes issue with the ALJ choosing to rely on the reports of examining physicians rather than the ME – the same issue she raised in her first assignment of error. It is insufficient for counsel merely to alert the Court to a potential claim without actually *briefing* the issue. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir.1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."); *Meridia Prods. Liab. Litig. v. Abbott Labs.*, No. 04-4175, 2006 U.S. App. LEXIS 11680 (6th Cir. May 11, 2006). Here, the Court fails to comprehend how Jefferson's dissatisfaction with the lack of weight afforded to the ME's testimony relates to her allegation that the credibility assessment was deficient. The Court declines to construct an argument on her behalf.

As such, the Court deems the second assignment of error waived.

**Step Five**

In her third assignment of error, Jefferson purports to argue that the ALJ failed to meet the Step Five burden of demonstrating that there are a significant number of jobs in the national

---

takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p, Introduction; *see also Cross*, 373 F.Supp.2d at 732.

economy that she can perform. (ECF No. 15 at 17-19.) Essentially, Jefferson contends that the hypothetical failed to account for all of her limitations. *Id*.

A hypothetical question must precisely and comprehensively set out every physical and mental impairment of the applicant that the ALJ accepts as true and significant. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Where the hypothetical question is supported by the evidence in the record, it need not reflect unsubstantiated allegations by claimant. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). However, where the ALJ relies upon a hypothetical question that fails to adequately account for all of the claimant's limitations, it follows that a finding of disability is not based on substantial evidence. *See Newkirk v. Shalala*, 25 F.3d 316, 317 (6th Cir. 1994).

Specifically, Jefferson asserts the hypothetical was inaccurate because it failed to incorporate the opinion of the ME that Jefferson's mental limitations would persist even in the absence of substance abuse, which, in turn, would result in Jefferson being unable to complete a normal work day or work week on a sustained basis. (ECF No. 15 at 17-19.) This argument merely rehashes the argument already addressed and rejected in Jefferson's first assignment of error. An ALJ need not include limitations that were found to be unsupported by the evidence or not credible.

In addition, Jefferson asserts that the hypothetical fails to incorporate the opinion of a nurse practitioner, Margaret Blasse, that Jefferson would miss four days of work per month due to her impairments or treatment. (ECF No. 15 at 18-19, *citing* Exh. 19F, Tr. 1072.) As pointed out by the Commissioner, Ms. Blasse's opinion was not submitted until after the ALJ rendered

18

the decision and was new evidence before the Appeals Council.[8] (ECF No. 18 at 13, n. 4.) As such, the ALJ could not have erred by failing to incorporate limitations based on an opinion that was not part of the record before her.

The VE's testimony — given in response to a hypothetical that reasonably reflected all the limitations that the ALJ found valid and credible — constituted substantial evidence capable of supporting the Step Five finding. Therefore, Jefferson's final assignment of error is without merit.

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision is AFFIRMED and judgment is entered in favor of the defendant.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: July 21, 2015

---

[8] Exhibit 19F, which consists of a "Medical Source Statement (Mental)" completed by Ms. Blasse, is dated February 5, 2013 — just a few days before the hearing held on February 7, 2013. (Tr. 13, 1072.) Nonetheless, Exhibit 19F is clearly stated to constitute "additional evidence" received by the Appeals Council on June 16, 2014, months after the ALJ's decision from April of 2013. (Tr. 5, 23.)